Dissenting Opinion by WATTS, J., which ADKINS, J., joins.
Respectfully, I dissent. This case presents unique circumstances and gives rise to a holding that would not be implicated in most cases involving competency challenges. In most instances, a defendant raises an issue of competency, and, if necessary, the trial court orders an evaluation and rules on the matter, and nothing more need be said.
Here, however, the issue of competency was not raised during Mario Sibug (“Sibug”)’s, Petitioner’s, 2008 trial. I would affirm the judgment of the Court of Special Appeals based on the thorough, well-reasoned, and, most importantly, legally sound opinion of Chief Judge Peter B. Krauser, writing on behalf of that Court. Put simply, I agree with the Court of Special Appeals that
the issue of Sibug’s competence to stand trial was never before [the Circuit Court for Baltimore County (“the circuit court”) ] at his [2008] trial[,] as it was not raised by counsel, the [circuit] court, or Sibug’s courtroom behavior. As such, the circuit court did not err in determining whether Sibug was competent because this issue was not before it.
Sibug v. State, 219 Md.App. 358, 374, 100 A.3d 1245, 1254 (2014).
The Majority frames the issue alternatively: “[W]e must address the quagmire that results from a defendant in a criminal case having been adjudicated incompetent, then eight years later being tried and convicted in the same case without having been adjudged competent to stand trial[,]” Maj. Op. at *320 267, 126 A.3d at 87 (footnote omitted), and “The first certiorari question now looms before us, that being whether[,] after having been adjudicated incompetent in the same case in the same court, Sibug needed to have been adjudged competent under Section 3-104 of the Criminal Procedure Article, Maryland Code (2001, 2008 Repl.Vol.) [ (“CP”),]” Maj. Op. at 305, 126 A.3d at 109 (footnote omitted). In framing the issue and disagreeing with the persuasive opinion of the Court of Special Appeals, the Majority accords little to no significance to critical facts—namely, in 2004, Sibug entered a plea of not guilty on an agreed statement of facts as to one count of second-degree assault, and was found guilty; and, at the time, Sibug did not raise any issue as to competency. Sibug was sentenced to four-and-a-half years of imprisonment with credit for time served, and, as a result, was immediately released from custody. Thereafter, Sibug did not file a motion for new trial, appeal, or raise any collateral challenge to the conviction on the ground that he had been incompetent to stand trial. Instead, Sibug filed a petition for a writ of error coram nobis in which he alleged that his trial counsel had failed to advise him of the immigration consequences of his conviction for second-degree assault. And, in 2005, the circuit court granted the petition for a writ of error coram nobis and granted Sibug a new trial.
In the intervening time period, for over three years, before his September 10, 2008 trial, Sibug never contended, pled, or raised in any manner that he was not competent to stand trial. In short, the issue of competency was not before the circuit court at Sibug’s 2008 trial, and was never before the circuit court until Sibug raised the issue in a motion for a new trial prior to sentencing. In raising the issue, Sibug’s counsel apparently did not assert that the issue remained ripe, as, in the motion for a new trial, Sibug’s counsel stated that, “in retrospect[,]” he then believed that Sibug had not been competent to stand trial. The circuit court properly denied the after-the-fact motion and found that Sibug had indeed been competent to stand trial.
The Court of Special Appeals correctly stated that there are three ways in which a trial court’s duty to determine a *321 criminal defendant’s competence may be triggered—“upon the motion of the defendant, upon the motion of the defendant’s counsel, or upon a sua sponte determination by the [trial] court that the defendant may not be competent to stand trial[,]” Sibug, 219 Md.App. at 369, 100 A.3d at 1251 (citation and internal quotation marks omitted)—and that none of these occurred in this case before or during trial, id. at 371-72, 100 A.3d at 1253. To adopt the Majority’s reasoning in this case is to conclude that an allegation of incompetence raised in 1999, not pursued in a not guilty agreed statement of facts and sentencing proceeding in 2004, nor in a petition for a writ of error coram nobis and the granting of a new trial on another ground in 2005, somehow remained ripe under CP §§ 3-101 to 3-123, and that the circuit court was required to adjudicate the matter, without any request by Sibug, before his 2008 trial. In complete agreement with the Court of Special Appeals, for reasons upon which I cannot much improve, I would not so conclude.[1] As stated by the Court of Special Appeals in Sibug, 219 Md.App. at 370, 100 A.3d at 1252:
Given that the reversal of a conviction “with an order for a new trial, ‘wipe[s] the slate clean,’ and the case [begins] anew proeedurally,” returning the case to the stage where “any pretrial motions could be filed and resolved,” Hammersla v. State, 184 Md.App. 295, 313-14, 965 A.2d 912[, 923, cert. denied, 409 Md. 49, 972 A.2d 862] (2009), it was incumbent upon Sibug, or his counsel, to raise the issue of incompetency anew. Cf. Harrod v. State, 423 Md. 24, 34-36, 31 A.3d 173[, 179-80] (2011) (explaining that the grant of a mistrial, like the grant of a new trial, “requires the litigants to observe pretrial procedures once again,” including the State’s obligation to give notice of its intent to introduce a chemist’s report[,] even though the same report had been introduced at the first trial); Marshall v. State, 213 Md. App. 532, 550-54, 74 A.3d 831[, 841-43, cert. denied, 436 Md. *322 329, 81 A.3d 458] (2013) (concluding that the grant of a new trial “effectively wipe[d] out the prior proceedings” and required the defendant to allege at his second trial that the Maryland gang statute was unconstitutional,] even though he had raised that same issue prior to his first trial).
(Some alterations in original).
As to the circuit court’s obligation to raise the issue of competency based on Sibug’s conduct at trial, the circuit court did not err in refraining from independently raising whether Sibug was competent to stand trial; it is undisputed that neither Sibug nor his counsel alleged incompetence to stand trial, and the record does not demonstrate that Sibug appeared to be incompetent to stand trial. Nothing in the record indicates that Sibug failed to observe proper courtroom behavior (e.g., by standing up, shouting, or moving around inappropriately). To the contrary, Sibug acted properly at trial; he elected to testify, and answered questions from his counsel and the prosecutor. It is accurate that, as noted by the Majority, Sibug referenced the Bible several times while testifying, prompting his counsel to ask the circuit court for permission to lead Sibug. See Maj. Op. at 316-17, 126 A.3d at 117. That said, Sibug’s counsel eventually elicited the testimony that he had been seeking (ie., that Sibug displayed a gun to his children, but did not point it at them), and Sibug’s references to the Bible in no way demonstrated that Sibug was “not able: (1) to understand the nature or object of the proceeding; or (2) to assist in [his] defense.” CP § 3—101(f) (paragraph breaks omitted). On this record, I would not conclude that the circuit court erred in refraining from raising Sibug’s competency sua sponte.
For the above reasons, respectfully, I dissent, as I would affirm the judgment of the Court of Special Appeals.
Judge Adkins has authorized me to state that she joins in this opinion.

. Likewise, I would conclude that the circuit court did not err in holding a hearing on the issue of Sibug’s competence after the trial’s conclusion, even though the circuit court was not required to do so.